UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                           v.

**Hon. Hugh B. Scott**

10CR110A

JEFF COON,

**Order**

                     Defendant.

This matter is referred to the undersigned to hear and determine pretrial matters pursuant to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C. § 636(b)(1)(A) (text referral Order, Apr. 15, 2010).

The instant matter before the court is the defendant's omnibus motion (Docket No. 19) which seeks the following relief: discovery; production of Brady materials; disclosure of Federal Rules of Evidence 404(b), 608, and 609 materials; disclosure of witness statements; and preservation of rough notes.

The Government has filed responding papers (Docket No. 21) and oral argument was heard on July 16, 2010. The Government also moves for reciprocal discovery (id. at 18-19). The Court reserved decision (Docket No. 24), later rendering a Report that recommended that a hearing be held to determine if the good faith exception under United States v. Leon, 468 U.S. 897 (1984), should sustain the search warrant at issue here (Docket No. 25). Familiarity with that Report is presumed. The Government moved for reconsideration of that Report (Docket No. 28), which was briefed (see Docket No. 30) and argued on October 7, 2010 (Docket No. 31).

Defendant's omnibus motion was deemed submitted on October 7, 2010. Separately, the Court will issue a Report & Recommendation on the Government's motion for reconsideration.

**BACKGROUND**

Defendant is charged with distribution of child pornography, receipt of child pornography, and three counts of possession of child pornography (one count for each of the hard drives or other memory device allegedly containing pornography) (Docket No. 12, Indict.).

On April 11, 2008, the Federal German Police (or abbreviated in German as "BKA") computer crime unit conducted a search for child pornography files in the file sharing network KaZaA when they found an IP address which contained a file of a video of a baby being raped (Docket No. 19, Def. Ex. A, Aff. of Adam Ouzer ¶ 24). A request was sent from the BKA to the United States Bureau of Immigration and Customs Enforcement (or "ICE") Cyber Crimes Center to identify the owner of that IP address (id. ¶ 25). Based upon publicly available records, the ICE Cyber Crimes Center identified the IP address as a computer owned by Tabitha Coon, residing at 422 21st Street, Niagara Falls, New York (id.). On March 29, 2009, special agent Adam Ouzer conducted a search of public records concerning 422 21st Street and learned that defendant Jeff Coon resided there and was named as the utility customer for that address (id. ¶ 26). According to the search warrant application of March 31, 2009 (see, e.g., Docket No. 19, Def. Ex. A, Ouzer Aff.), the Government sought to search the computer and hard drives at 422 21st Street, Niagara Falls, owned by defendant on the suspicion of their containing child pornography.

This Court issued the search warrant on March 31, 2009, and the warrant was executed on April 6, 2009 (Docket No. 28, Gov't Motion at 2). After a forensic examination of the seized computer and other storage material, on September 18, 2009, a criminal complaint and arrest

warrant were authorized for defendant (id.; Docket No. 1). Later the grand jury indicted defendant, charging him with distribution of child pornography on or about April 11, 2008 (Docket No. 12, Indict., Count 1), when he received the rape video first detected by the BKA. Count 2 charges that defendant received a second video on March 26, 2009, purportedly depicting the rape of another underage child (id. Count 2). Counts 3, 4 and 5, charge the defendant with possession of child pornography on two different hard drives and a computer disk on or about April 6, 2009 (id. Counts 3-5).

## DISCUSSION

I.  Discovery

Defendant first seeks various items of pretrial discovery. The Government contends that it has produced materials and met its discovery obligations (Docket No. 21, Gov't Response at 10).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

A.  Documents and Tangible Objects

Pursuant to Rule 16(a)(1)(C), defendant seeks a copy of any and all item seized on the day of his arrest (Docket No. 19, Def. Atty. Aff. ¶ 13a.) and any audio or video recordings made

in the case (id. ¶ 13b.). He also seeks any fingerprint analysis and any color photographs taken regarding his arrest (id. ¶ 13c., d.).

The Government responds that no items were seized on the day of defendant's arrest, no audio or video recordings were made, and no fingerprints or photographs were taken during the arrest (Docket No. 21, Gov't Response at 10).

### B. Examinations and Test Reports

Pursuant to Rule 16(a)(1)(D), the defendant next requests the production of the results of any physical examinations or scientific tests (Docket No. 19, Def. Atty. Aff. ¶ 13e.). The Government has responded that it had produced computer forensic analysis to defendant (Docket No. 21, Gov't Response at 10).

The court assumes that the Government's production has satisfied the defendant's request in this regard.

### C. Rule 12(b)(4) Request

Pursuant to Rule 12(b)(4), defendant requests that the Government give notice of its intention to use at trial any evidence which is discoverable under Rule 16 (Docket No. 19, Def. Atty. Aff. ¶ 13e.ii.). Such notice, under the rules, avoids the necessity of a defendant having to move to suppress evidence which the Government does not intend to use.

The Government states that it has complied with this notice requirement and, upon a more specific inquiry, will meet its obligations under Rule 16 pursuant to any schedule set by the Court (Docket No. 21, Gov't Response at 11).

D.  Disclosure of Expert Materials

Pursuant to Rule 16(a)(1)(E), defendant seeks disclosure of the Government's experts' identity, a written summary of any expert testimony that the Government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report (Docket No. 19, Def. Atty. Aff. ¶ 13e.).

The Government states that the only expert witness that may be called is Senior Special Agent Brian Braisted and the Government has produced his report to defendant (Docket No. 21, Gov't Response at 10). The Government's response suffices; this request is **deemed moot**.

II. Brady

The defendant has requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

The defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain. The Government's written response is, in its entirety, as follows: "The government is cognizant

5

of its duty under Brady v. Maryland. At present, the Government is unaware of any Brady material."

It is unclear as to whether the Government's response included considerations regarding "impeachment" Brady material as well as exculpatory Brady material.

Neither the Supreme Court, nor the Second Circuit[1], have ruled directly on whether a there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the timing such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent, conflict between the Government's obligations to disclose under Brady and the Government's right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure. United States v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979) (the court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); United States v. Perez, 870 F.2d 1222 (7th Cir. 1989) (the Government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); United States v. Ziperstein, 601 F.2d 281 (7th Cir. 1979) (a defendant receives a fair trial, notwithstanding delayed disclosure of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence); but see United States v. Wilson, 565 F. Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); United States v. Biaggi, 675 F. Supp. 790 (S.D.N.Y. 1987) (information bearing on a

---

[1] In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

witness' credibility may be turned over at the same time as [Jencks Act] materials); United States v. Feldman, 731 F. Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the Government to disclose Brady impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by Government witnesses. Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles. To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. United States v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979); but see United States v. Presser, 844 F.2d 1275 (6th Cir. 1988) (the Government may not be compelled to pretrial disclosure of Brady or Jencks material). The record in this case does not reflect whether any of the materials withheld by the Government may be considered both Brady and Jencks material. Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

III.  Federal Rules of Evidence 404(b), 608, 609 Disclosures

Defendant next requests disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b). The defendant also requests disclosure of all evidence of prior bad acts that the Government intends to use for impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government has represented that it will provide all such material to the defendant at the time of the pretrial conference in this case. This is sufficient in this case.

IV.  Jencks Act

Defendant next seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500. The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. In this case, the Government has agreed to disclose this information at the pretrial conference.

The defendant has not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.

V.	Preservation of Rough Notes

Defendant has also requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 19, Def. Atty. Aff. ¶¶ 40-43). The Government directed its agents to incorporate all rough notes into formal reports and those reports have been produced, hence preserving the rough notes is unnecessary (Docket No. 21, Gov't Response at 16-17). Agents need not preserve their rough notes if the agents incorporate these notes into formal reports, United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988) (id. at 16), thus defendant's motion to preserve rough notes here while having that information included in formal reports is **denied**.

VI.	Government's Reciprocal Motion for Discovery

Finally, the Government moves for reciprocal discovery (Docket No. 21, Gov't Response at 18-19), without objection from defendant. Under Rule 16, the Government is entitled to production of documents in defendants' possession that they intend to use in their respective case-in-chief. Defendants are reminded of their obligations under Rule 16 to produce, therefore, the Government's cross-motion is **granted**.

## CONCLUSION

For the reasons stated above, so much of defendant's omnibus motion seeking discovery and disclosure and like relief (Docket No. 19) is **granted in part, denied in part** as described

above. The Government's reciprocal motion for discovery (Docket No. 21, Gov't Response at 18-19) is **granted**.

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 8, 2010