UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                              **Hon. Hugh B. Scott**

v.

                                              10CR110A

                                              **Report**
JEFF COON,                                     **&**
                                            **Recommendation**

                       Defendant.

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (text referral Order, Apr. 15, 2010). The instant matter before the Court is the Government's motion for reconsideration (Docket No. 28) of an earlier Report & Recommendation (Docket No. 25[1]) on defendant's motion to suppress. This motion was argued on October 7, 2010, and deemed submitted (Docket No. 31).

        Defendant had filed an omnibus motion seeking suppression of evidence and other forms of discovery relief (Docket No. 19[2]). This motion was argued on July 16, 2010, and the Court reserved decision (Docket No. 24), later rendering a Report that recommended that a hearing be held to determine if the good faith exception under United States v. Leon, 468 U.S. 897 (1984),

---

      [1]In support of this motion, the Government submits the motion with an exhibit, the warrant application affidavit of agent Adam Ouzer, Docket No. 28, Ex. A. In opposition, defendant filed his attorney's opposing affirmation, Docket No. 30.

      [2]In support of this motion, defendant submits his counsel's affirmation with exhibits, Docket No. 19. The Government opposes with its Response, with exhibits (cover correspondence for produced discovery), Docket No. 21.

should sustain the search warrant at issue here (Docket No. 25). Familiarity with that Report is presumed.

**BACKGROUND**

Defendant is charged with distribution of child pornography, receipt of child pornography, and three counts of possession of child pornography (one count for each of the hard drives or other memory device allegedly containing pornography) (Docket No. 12, Indict.). According to the search warrant application of March 31, 2009 (see Docket No. 19, Def. Ex. A; Docket No. 28, Ex. A), the Government sought to search the computer and hard drives at 422 21st Street, Niagara Falls, New York, owned by defendant on the suspicion of their containing child pornography.

On April 11, 2008, the Federal German Police (or abbreviated in German as "BKA") computer crime unit conducted a search for child pornography files in the file sharing network KaZaA when they found an IP address which contained a file of a video of a baby being raped (id. Aff. of Adam Ouzer ¶ 24). A request was sent from the BKA to the United States Bureau of Immigration and Customs Enforcement (or "ICE") Cyber Crimes Center to identify the owner of that IP address (id. ¶ 25). Based upon publicly available records, the ICE Cyber Crimes Center identified the IP address as a computer owned by Tabitha Coon, residing at 422 21st Street, Niagara Falls (id.).

On March 29, 2009, special agent Adam Ouzer conducted a search of public records concerning 422 21st Street and learned that defendant Jeff Coon resided there and was named as the utility customer for that address (id. ¶ 26). Based entirely upon this, the Government argued that there was probable cause to search those premises. Ouzer, an agent with ICE since June

2007, did not allege in his affidavit that child pornographers in general, or this defendant in particular, hoard or retain collections of pornographic material on their computers, but did assert that the search of computers is time-consuming, in part, because files may be "deleted" but are in fact retained on the computer's hard drive until overwritten (id. ¶ 18). Otherwise, an attempted deletion merely removes indicating pointers to that file while the file itself remains for forensic retrieval (id.).

This Court issued the search warrant on March 31, 2009, and the warrant was executed on April 6, 2009 (Docket No. 28, Gov't Motion at 2). After a forensic examination of the seized computer and other storage material, on September 18, 2009, a criminal complaint and arrest warrant were authorized for defendant (id.; Docket No. 1, Crim. Compl). Later the grand jury indicted defendant, charging him with distribution of child pornography on or about April 11, 2008 (Docket No. 12, Indict., Count 1), when he received the rape video first detected by the BKA. Count 2 charges that defendant received a second video on March 26, 2009, purportedly depicting the rape of another underage child (id. Count 2). Counts 3, 4 and 5, charge the defendant with possession of child pornography on two different hard drives and a computer disk on or about April 6, 2009 (id. Counts 3-5).

*Defendant's Motion to Suppress*

Defendant moved to suppress evidence (the seized computer hard drives and disks) arguing that the March 2009 search warrant was stale when it was executed based solely on criminal activity that allegedly occurred on April 2008 (Docket No. 19, Def. Atty. Affirm. ¶¶ 4-7). He denies that the warrant application alleges ongoing criminal activity to justify the single instance almost one year prior as supporting probable cause to search (id. ¶ 9). He also denied

3

that the officers could have reasonably relied upon this stale warrant application and the warrant issued was not saved by the Leon good faith exception, see United States v. Leon, 468 U.S. 897 (1984) (id. ¶ 10). Defendant also sought to suppress (as fruit of the poisonous tree) the subscriber information from the separate warrant issued to Yahoo.com for his subscription information, since that warrant application also lacked sufficient facts to provide probable cause (id. ¶¶ 11, 12).

The Government responded that the information in support of both warrants was not stale, relying upon the argument that the nature of the offense determines whether the information was stale (Docket No. 21, Gov't Response at 4-5), and that the nature of the offense of child pornography in general, has been found by other courts to justify long periods of time between the underlying facts and execution of the warrant. This is because those involved in child pornography tend to retain images for long periods of time (hoard) (id. at 5-7, citing cases). During oral argument of the original motion, the Government emphasized that defendant was charged with possession of child pornography, a continuing offense; hence the single instance of possession from 2008 was not stale so as to deny the existence of probable cause to conduct a search in 2009.

During that argument, defendant distinguished the cases cited by the Government. For example, the Government cited this Court's decision in United States v. Patt, No. 06CR6016, 2008 WL 2915433, 2008 U.S. Dist. LEXIS 57318, at *33-34 (W.D.N.Y. July 24, 2008) (Payson, Mag. J.) (Report & Recommendation) (Docket No. 21, Gov't Response at 5), and its application of the staleness doctrine. Defendant responded that this case required the Government to show a sufficient basis for a continuing pattern of activity to presume that the single instance identified

supported probable cause at a later date. He also argues that the Government fails to show any pattern of distribution to confirm ongoing activity to eliminate the staleness of one instance.

*Initial Report & Recommendation*

This Court then rendered its Report & Recommendation (Docket No. 25), considering whether there was probable cause to conduct this search based upon the purported staleness of the detected contraband (id. at 4-8). After discussing the case law cited by the Government and defendant (id. at 5-7), the Court found that agent Ouzer failed to state that child pornographers in general (or defendant in particular) tend to hoard their digital collections, hence obviating any staleness argument; specifically stating "absent an affirmative allegation by the Government agents that this defendant was engaging in that collecting or hoarding (or even the broader, general supposition that child pornographers collect and would retain materials for a prolonged period of time), a motion to suppress **should remain viable**" (id. at 8, emphasis in original). The Court then ordered a suppression hearing as to the Leon good faith exception for the agents to rely upon this warrant, initially set for September 20, 2010 (id. at 8-9), but was not held upon.

*Government's Motion for Reconsideration*

The Government moves to reconsider the Report & Recommendation, arguing that the warrant was supported by probable cause (Docket No. 28, Gov't Motion at 4-15), or that the Leon good faith exception should apply to authorize this search (id. at 15-20). Both the Government (id. at 20-21) and defendant (Docket No. 30, Def. Atty. Affirm. at 14-15) urge that a suppression hearing on the Leon issue is not necessary. First, the Government argues that probable cause only required a finding that there was a "fair probability that contraband or evidence of a crime will be found in a particular place," United States v. Smith, 9 F.3d 1007,

5

1012 (2d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)) (Docket No. 28, Gov't Motion at 5). Applying common sense and practical judgment and reviewing the evidence and the totality of the circumstances, the Government urges the Court to affirm its initial finding that probable cause existed for the search, that there was a "fair probability that evidence of the alleged child pornography offense might be found at the defendant's residence" (id.). The Government argues that it need not allege hoarding by child pornographers to mitigate a staleness argument here, citing at least two cases where the courts did not require an explicit assertion of hoarding to justify a subsequent search warrant (id. at 6-7, citing United States v. Payne, 519 F. Supp. 2d 466, 477 (D.N.J. 2007); United States v. Rowell, No. 2:06CR0074(1), 2007 WL 106024, at *3 (N.D. Tex. Jan. 16, 2007) (Averitte, Mag. J.)), with one court taking judicial notice of the practice of child pornographers typically to retain their dross, see Rowell, supra, 2007 WL 106024, at *3; see also United States v. Toups, No. 2:06-cr-112-MEF, 2007 WL 433562, at *3-4 (M.D. Ala. Feb. 6, 2007); United States v. Shackleford, No. CRIM. A. 06-119, 2007 WL 403627, at *7-8 (E.D. Ky. Feb. 1, 2007) (Wier, Mag. J.), see id., at *1 (Caldwell, J.) (adopting Report & Recommendation) (id. at 10). The Government reiterates cases it previously relied upon for showing that probable cause exists here despite the time between initial detection and the application (id. at 7-8). The Government points to United States v. Wiser-Amos, No. 3:07CR-42-M, 2007 WL 2669377, at *7 (W.D. Ky. Sept. 7, 2007), as having identical facts as this case, where the Wiser-Amos court upholding the warrant issued seven months after German authorities detected a single child pornography video (id. at 8-9). The Government argues that, in other cases where agents swore that child pornographers tend to hoard their dross, those courts did not require that fact as a element for finding probable cause to authorize those

6

searches (id. at 9). Alternatively, the Government concludes that the warrant application sets forth sufficient indicia of probable cause (id. at 11).

Defendant responds that the cases cited by the Government are distinguishable, either by the relative brevity of the delay between detection and search, the agent's affirmation that child pornographers tend to hoard their materials, or there was other evidence of continuing activity in those cases to justify the search (Docket No. 30, Def. Atty. Affirm. at 2-8). He notes that the IP address was subscribed to by his wife (cf. Docket No. 28, Gov't Motion at 11), and his counsel later argued that only in rare cases are women involved in collecting child pornography, requiring in the defense's mind that there be further corroboration before the search warrant was issued. Defendant argues that the Court need only look at the four corners of the warrant application and the facts as presented to the Court at the time of the application and determine whether "an objectively reasonable police officer could believe that it made out a case of probable cause, when considering the problems with staleness and sufficiency of the evidence" (Docket No. 30, Def. Atty. Affirm. at 14-15) and a suppression hearing is therefore not warranted.

## DISCUSSION

I.      Reconsideration under Federal Criminal Procedure

The parties do not address the threshold issue of whether this Court can reconsider its Report & Recommendation. Under 28 U.S.C. § 636(b)(1), Federal Rule Criminal Procedure 59(b)(2), and this Court's Local Criminal Rule 58.2(a)(3), the normal route to challenge the findings and recommended conclusions in a Report & Recommendation is to file a timely Objection with the District Judge. Instead of filing an Objection, the Government here moved for reconsideration.

The Federal Rules of Criminal Procedure make no provision for reconsideration. Judge Larimer in another case held that the Magistrate Judge there had the "discretion to reconsider or reopen prior proceedings which precipitated" the Magistrate Judge's decision, United States v. Florack, 155 F.R.D. 49, 51 (W.D.N.Y. 1994); see United States v. Benacquista, No. 08CR94, Docket No. 59, Order, at 4, 2010 U.S. Dist. LEXIS 11727, at *5-6 (W.D.N.Y. Feb. 10, 2010) (Scott, Mag. J.) (granting reconsideration on Government's motion). In Florack, the Government sought reconsideration (pursuant to then Federal Rule of Criminal Procedure 12(f)[3]) by Magistrate Judge Fisher of his refusal to allow the Government to argue an otherwise defaulted suppression motion, Florack, supra, 155 F.R.D. at 50-51; see id. at 51-52 (Report & Rec. of Fisher, Mag. J.). Judge Siragusa of this Court held in United States v. Amanuel, No. 05CR6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006), that the civil standard for reconsideration is applicable in criminal cases, that the standard for reconsideration is "strict" and reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," id. (internal quotations and citations omitted).

Thus, the Court will reconsider its Report & Recommendation.

II.     Staleness and Probable Cause for Search Warrants

"To be valid under the Fourth Amendment a search warrant must be supported by probable cause. When making the probable cause determination, a magistrate judge must make a common sense account of all the circumstances, Illinois v. Gates, supra, 462 U.S. at 238, and in doing so determine whether the information in the application is current or has become stale,"

---

[3]Now, in part, Federal Rule of Criminal Procedure 12(e).

United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) (citation omitted). In order to determine whether probable cause exists to issue a search warrant, one factor the Court must consider is

> "whether the information adduced in the application appears to be current, i.e., true at the time of the application, or whether instead it has become stale. '[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.' United States v. Martino, 664 F.2d 860, 867 (2d Cir. 1981) . . . ."

Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991) (Docket No. 19, Def. Atty. Affirm. ¶ 8). Either "the facts must be sufficiently close in time to the issuance of the warrant and the search so that probable cause can be said to exist at the time of the search" (id., citing United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)) or the facts must show continuing conduct on an ongoing activity to eliminate the possibility that the potentially stale single cited incident was not a "one-time occurrence," Wagner, supra, 989 F.2d at 75 (id.).

The issue here is whether the nature of collecting child pornography on a computer extends or obviates the concept of staleness, see Shackleford, supra, 2007 WL 403627, at *7 (staleness in child pornography measured in years rather than months, citing cases, e.g., Irving, supra, 452 F.3d at 125 (2d Cir. 2006) (two-year-old information held not to be stale)).

To the defense argument that the hard drive could have been replaced in the nearly one year between detection and search (Docket No. 30, Def. Atty. Affirm. at 9-10), one court has found that the point is "misguided"; "it is not necessary for authorities to establish absolute confidence in the outcome of their search. Rather, circumstances that 'indicate a fair probability

9

that evidence of a crime will be located on the premises of the proposed search' is sufficient to demonstrate probable cause for a search warrant," Shackleford, supra, 2007 WL 403627, at *7 n.3; but cf. United States v. Greathouse, 297 F. Supp. 2d 1264, 1272 (D. Ore. 2003) (assumption that child pornographers retain material on computer indefinitely does not factor in obsolescence in equipment and possible replacement of equipment within a year).

The Government relies on this Court's earlier decision in Patt, denying suppression on staleness grounds in a similar circumstances (Docket No. 28, Gov't Motion at 7, 12), as well as decisions from other courts (noted above, e.g., Payne, supra, 519 F. Supp. 2d at 477; Rowell, supra, 2007 WL 106024, at *3) that found as a matter of judicial notice that pornography collectors retain their materials for long periods of time. In Patt, the defendant sought to suppress evidence seized under a search warrant for child pornography on defendant's computer. The uploading and downloading activity onto defendant's computer occurred on February 2005 and the warrant application was submitted to the Court on September 2005. 2008 U.S. Dist. LEXIS 57318, at *33. After noting the propensity of "collectors" charged with child pornography in other cases "to maintain their collection for extended periods of time in a private location, such as a home" and one appellate court's conclusion that "'collectors of child pornography rarely, if ever, dispose of their collections,'" id. at *34 (quoting United States v. Shields, 458 F.3d 269, 279 n.7 (3d Cir. 2006)), Magistrate Judge Payson in Patt also noted that "child pornography is often transferred and stored on a computer means that evidence of that pornography can frequently be recovered even if the specific computer files were deleted," id. at *35. Magistrate Judge Payson recommended denying suppression here because of the nature of the offenses, the relatively short period between the act and the warrant (eight months) and the

capability of forensic experts to locate materials that a defendant attempted to "delete," id. at *36. The Court there also did not find that particular defendant had the propensity to collect or hoard pornographic materials. In fact the search warrant application is similar to the one in this case, see id. at *3-7, that is, a computer in another state identified uploads and downloads from an IP address later identified to be at the defendant's residence, and public records verified the residents at that location. Based upon that single transfer of electronic materials and the nature of child pornography as an offense, the Court upheld the warrant and denied suppression.

While Patt and the other cases cited by the Government presume that child pornographers are hoarders of their pornographic images and rarely (if ever) dispose of them, Shields, supra, 458 F.3d at 279 n.7; United States v. Ricciardelli, 998 F.2d 8, 12 n.4 (1st Cir. 1993); Patt, supra, 2008 U.S. Dist. LEXIS 57318, at *33-35; United States v. Diaz, 303 F. Supp. 2d 84, 90-92 (D. Conn. 2004); United States v. Cox, 190 F. Supp. 2d 330, 333-34 (N.D.N.Y. 2002); Irving, supra, 452 F. 3d at 125; United States v. Lamb, 945 F. Supp. 441, 460 (N.D.N.Y. 1996) (Docket No. 21, Gov't Response at 5-7; see generally Docket No. 28, Gov't Motion at 6-14); but cf. Greathouse, supra, 297 F. Supp. 2d at 1272 (finding no basis for agent's assertion of child pornography collector hoarding, assumption based upon informal conversations among agents and not based on empirical data or studies), there is no record here that this defendant also hoarded child pornography so as to make a single instance of receipt of that material a basis for probable cause to search his computer almost a year after the fact. Many of these cases repeat the general conclusion that "collectors of child pornography often store their material and rarely discard it," Shields, supra, 458 F.3d at 279 n.7, without discussing whether the party before it

11

was that sort of collector[4]. For example, in Shields itself the defendant did not raise a staleness challenge and, in dictum, the court found that staleness analysis would not change the result, id. In Lamb, 945 F. Supp. at 460, the agent applying for the warrant represented, as an expert in the filed of child pornography investigation, that collectors rarely dispose of their material; see also Cox, supra, 190 F. Supp. 2d at 334 (agent averred in application that user of internet account received numerous pornographic images over a three-year period and would likely retain them); Diaz, supra, 303 F. Supp. 2d at 91(application contains statements regarding retention practices of those who create or distribute pornographic videos, mooting staleness argument); United States v. Hay, 231 F.3d 630, 633-36 (9th Cir. 2000) (affidavit explains pornographic collector's habits), cert. denied, 534 U.S. 858 (2001). In Irving, supra, 452 F.3d at 116, 125, the search warrant application in a prosecution for travel for the purpose of having sex with minors stated that an informant had told agents that the defendant used his home computer to communicate with fellow boy lovers and to send and receive pornographic materials. The Second Circuit in Irving, id. at 125, relied upon the general conclusion found in Lamb, supra, 945 F. Supp. at 460, that images of child pornography are likely to be hoarded.

While other courts have taken judicial notice of what child pornographers presumably do with their materials, this Court finds that probable cause exists from the operations of the computer and the inability to truly delete a file from a hard drive. As the Government notes in its oral argument of the reconsideration motion, hard drives are durable, see Shackleford, supra,

---

[4] Some of these cases need not detain the Court. In Ricciardelli, for example, the First Circuit discussed anticipatory warrant and defendant's argument about exigent circumstances, concluding that child pornography "will rarely, if ever" be exigent because "as history teaches" child pornographers prefer to retain their "dross" for years, 998 F.2d at 12 n.4.

2007 WL 403627, at *7.  There is a fair probability that evidence or contraband was on defendant's computer, despite the nearly one year delay in seeking access to it.  Upon reconsideration, defendant's motion to suppress should be **denied**.  Given this proposed disposition, the Court need not consider whether the agent relied upon that warrant in good faith in executing under Leon.  Both parties have concluded that a good faith hearing is not necessary here.

## CONCLUSION

Based upon the above, it is recommended that so much of defendant's omnibus motion seeking to suppress evidence (Docket No. 19) be **denied**.  As stated in the initial Report (Docket No. 25, at 1), the Court will consider in a separate Order defendant's discovery motions contained in the omnibus motion.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection**.

SO ORDERED.

*/s/ Hugh B. Scott*  
Hon. Hugh B. Scott  
United States Magistrate Judge

Dated: Buffalo, New York
      November 8, 2010